IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-220-FL

| | | |
|---|---|---|
| THE GENERATION COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HOLIDAY HOSPITALITY FRANCHISING, LLC; and INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), or to transfer the case to the Northern District of Georgia, Atlanta Division. (DE 7). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the following reasons, defendants' motion to transfer is granted and their motion to dismiss is denied without prejudice.

**STATEMENT OF THE CASE**

Plaintiff The Generation Companies, LLC ("Generation") is a real estate development company based in Raleigh, North Carolina, that owns and operates hotels throughout the southeast United States. Defendant Holiday Hospitality Franchising, LLC ("HHF") controls a hotel licensing system for the hotel brand Staybridge Suites, and defendant InterContinental Hotels Group Resources, Inc. ("IHGR") controls a number of other hotel brands, such as Holiday Inn and Crowne Plaza. Defendants share a distant corporate parent, and both maintain their principal places of

business in Atlanta, Georgia. The parties' dispute involves alleged statements defendants made to a third party, Hilton Worldwide Holdings Inc. ("Hilton"), concerning a licensing agreement for a hotel located at Southside Boulevard and Touchton Road in Jacksonville, Florida (the "hotel").

On April 20, 2015, plaintiff initiated this action in Wake County Superior Court, asserting claims for tortious interference with contract, slander per se, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75.1.1. These claims rest upon plaintiff's allegations that defendants falsely informed Hilton that plaintiff was unauthorized to terminate a certain licensing agreement (the "2006 Licensing Agreement"), and that defendants' communication harmed plaintiff's business relationship with Hilton. Plaintiff seeks compensatory and punitive damages, treble damages pursuant to N.C. Gen. Stat. § 75-16, and attorney fees pursuant to N.C. Gen. Stat. § 65-16.1.

On May 22, 2015, defendants removed the action to this court. Shortly thereafter, on May 29, 2015, defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, or to transfer the case to the Northern District of Georgia pursuant to a mandatory forum-selection clause. Defendants argue for dismissal on the following bases: defendant IHGR was not a party to any agreements with plaintiff; defendant HHF maintained a privileged contractual relationship with plaintiff that precluded any claim for tortious interference with contract; and defendant HHF's alleged statements to Hilton were not defamatory on their face, were protected as truthful, and did not support a related claim for unfair and deceptive trade practices. Defendants contend transfer would be proper because plaintiff is bound by a mandatory forum-selection clause incorporated by reference in the 2006 Licensing Agreement, and the scope of the clause encompasses plaintiff's claims. In support of their motion, defendants submitted: a declaration by Jenny Tidwell, an employee of defendant HHF (DE 8-2); the license agreement between plaintiff

2

and defendant HHF ("2006 License Agreement," DE 8-3); plaintiff's guaranty of the license agreement ("Guaranty," DE 8-4); and three addenda to the license agreement (DE 8-5, 8-6, 8-7).

On June 19, 2015, plaintiff filed a response. (DE 21). In addition to opposing dismissal of its substantive claims, plaintiff opposed defendants' motion to transfer on the bases that plaintiff's choice of forum merited deference and promoted convenience due to the location of plaintiff's corporate headquarters. To that end, plaintiff submitted a declaration by its manager, H. Mark Daley, III, describing the location of plaintiff's headquarters. (DE 21-1). Defendants filed a reply on July 9, 2015, arguing that recent case law showed choice of forum and private convenience were not to be considered in determining whether to transfer an action on the basis of a forum-selection clause. (DE 22).

**STATEMENT OF FACTS**

Plaintiff and defendant HHF executed the 2006 License Agreement on December 8, 2006. (DE 8-3). The 2006 License Agreement granted plaintiff a license to use defendant HHF's trademarks and brand to operate the hotel for a ten-year term. (Id., ¶¶ 1, 3.A, 12.A). Among other terms, the 2006 License Agreement included provisions for termination, liquidated damages, choice of law, transfer of obligations, and change of ownership. (Id. ¶ 12, 12.E, 14.B, 10.B, 15.E). It also included a guaranty, which provided:

> [T]he undersigned [plaintiff], . . . hereby unconditionally warrant to Licensor [defendant HHF] . . . that all of Licensee's representations in the License and the application submitted by the Licensee to obtain the License are true, and guarantee that all of Licensee's obligations under the License, including any amendments thereto whenever made . . . will be punctually paid and performed.

(Id. at 33; Guaranty, DE 8-4, ¶ 1).

3

Over the next several years, three addenda modified the 2006 License Agreement. Each addendum supplemented the 2006 License Agreement by replacing the previous licensee with a new, third party partially owned by plaintiff.[1] (DE 8-5, ¶ 1; DE 8-6, ¶ 1; DE 8-7, ¶ 1). For example, the most recent addendum (the "2013 Addendum") replaced the previous licensee, Generations Properties III, LLC ("GP3"), with GP4 Property Owner, LLC ("GP4"), the newest licensee:

> This Third Addendum (the "Addendum") is made and entered into as of this 22nd day of October, 2013, by and between [defendant HHF] and [GP3] and [GP4]. This Addendum supplements that certain License Agreement, dated December 8, 2006 (the "License") between Licensor and License, relating to the license to operate the [hotel]. . . . The License is hereby amended by deleting the Licensee name of [GP3] wherever it appears . . . and replacing it with the following: [GP4].

(DE 8-7, ¶ 1). In addition, each addendum included a provision incorporating by reference the Guaranty that plaintiff and defendant HHF executed in connection with the 2006 License Agreement. (DE 8-5, ¶ 4; DE 8-6, ¶ 5; DE 8-7, ¶ 4). For example, the 2013 Addendum provided:

> Except as expressly stated in this Addendum, no further additions, modification or deletions to the License are intended by the parties or made by this Addendum. All other terms and conditions of the License remain in full force and effect, including the Guaranty.

(DE 8-7, ¶ 4).

In June 2014, plaintiff alleges that GP4 requested and received from defendant HHF an estimate of the liquidated damages GP4 would owe if it terminated the 2006 License Agreement. (Compl., DE 1-3, ¶ 10). Sometime thereafter, GP4 provided written notice to defendant HHF that their agreement was terminated effective April 1, 2015, and that GP4 was willing to pay the required liquidated damages. (Id., ¶ 11).

---

[1] The addenda required plaintiff to maintain a certain percent equity interest in each new licensee. (DE 8-5, ¶ 2; DE 8-6, ¶ 3; DE 8-7, ¶ 2). At the time the most recent addendum (the "2013 Addendum") was executed, plaintiff owned the largest single equity interest in GP4 with 14 percent. (DE 8-7, ¶ 2).

4

On December 22, 2014, plaintiff executed a new hotel licensing agreement with a Hilton-affiliated franchisor (the "Hilton Agreement"), and began renovations converting the hotel to the Hilton brand. (Id., ¶ 12). Plaintiff alleges that on February 6, 2015, shortly after defendants learned of plaintiff's Hilton Agreement, one of defendants' employees communicated to Hilton that defendant HHF had an in-force agreement with plaintiff, and that plaintiff was unable to terminate the agreement. (Id., ¶¶ 13–14). Thereafter, on February 10, 2015, Hilton relayed defendants' message to plaintiff, and Hilton advised plaintiff that it would not proceed with the Hilton Agreement until it received a full release of liability from defendants.

## DISCUSSION

A.  Standard of Review

Defendants move either to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, or to transfer on the basis of a forum-selection clause. As set forth below, the court finds transfer of venue as an initial matter to be in the interest of justice in light of the forum-selection clause favoring the Northern District of Georgia, and choice-of-law provisions requiring application of Georgia law. Therefore, the court transfers venue without reaching defendants' motion to dismiss.

As pertinent here, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "An order allowing transfer of a matter to another district is committed to the discretion of the district court." In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984); see also Southern Ry. Co. v. Madden, 235 F.2d 198, 200–01 (4th Cir. 1956). The court may exercise its discretion to transfer a case to a proper venue agreed upon by the parties, such as when a forum-

5

selection clause governs the dispute. See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas, 134 S. Ct. 568, 580–81 (2013). "The effect of the [forum-selection] provision, of course, is not to foreclose a consideration of the merits of plaintiff's case; on the contrary plaintiff will have an appropriate forum for its claim." Id. at 1913 n.11. For example, in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the Court held that district courts should treat parties' arguments based upon forum-selection clauses as motions to transfer under § 1404(a). Id. at 28. In that instance, the Court declined to address a party's motion to dismiss a case pursuant to § 1406, which permits courts to cure defects in venue through dismissal. (Id. at 24). Instead, the Court analyzed the party's motion to transfer under § 1404(a). Id. at 28–31.

Courts have favored analysis pursuant to § 1404(a) in cases where parties relied on other bases for dismissal or transfer as well. See, e.g., Atl. Marine, 134 S. Ct. at 575 (rejecting enforcement of a forum-selection clause by motions to dismiss under § 1406(a) and Rule 12(b)(3), and instead favoring § 1404(a) transfer analysis); Pawlik v. AmeriLife Group, LLC, No. 13-80172-CIV, 2014 WL 793080, at *10 ( S.D. Fla. Feb. 25, 2014) ("In light of the Court's recommendation regarding transferring venue, there is no need to address those portions of Defendant's Motion that seek dismissal for failure to state a claim pursuant to Rule 12(b)(6)."); Dan Dill, Inc. v. Ashley Furniture Indus., Inc., No. 5:07-CV-111, 2008 WL 3287255, at *1 (W.D.N.C. Aug. 7, 2008) (transferring venue where the defendants removed the case from state to federal court pursuant to § 1441(a) before moving to transfer venue on the basis of a forum-selection clause). Accordingly, the court addresses as an initial matter defendants' motion to enforce the parties' instant forum-selection clause under § 1404(a). See Atl. Marine, 134 S. Ct. at 581–82.

B.  Analysis

Forum-selection clauses implicate a number of litigable issues. See, e.g., id. at 581 (detailing "the adjustments required in a § 1404(a) analysis when the transfer motion is premised on a forum-selection clause"); see generally 14D Charles Alan Wright, et al., Federal Practice and Procedure § 3803.1 (4th ed. & Supp. 2015). For example, the court must ascertain what law applies to interpreting the underlying agreement. Then, the court must consider whether the scope of the forum-selection clause encompasses the dispute at hand. If it does, the court must decide whether the clause mandates or merely permits transfer, and whether it directs litigants to federal or state court. Finally, if the agreement is enforceable, the court must consider the public interest factors implicated by transfer of venue. The court addresses each of these issues in turn.

1.  Choice of Law

Interpreting a forum-selection clause first requires the court to ascertain what law applies to the contract, because the court must apply that law to decide the scope of the contract's relevant clauses. See Atl. Marine, 134 S. Ct. at 583–84; Queen City Pastry, LLC v. Bakery Tech. Enterprises, LLC, No. 5:14-CV-143, 2015 WL 3932722, at *3 (W.D.N.C. June 26, 2015) (quoting Martinez v. Bloomberg, LP, 740 F.3d 211, 217 (2d Cir. 2014)) ("'[T]he body of law selected in an otherwise valid choice-of-law clause' governs the interpretation of a forum-selection clause.").

Here, the Guaranty and the 2006 License Agreement provide that the parties' obligations "shall be governed and construed" in accordance with the "laws and decisions . . . of the State of Georgia." (DE 8-3, ¶ 14.B; DE 8-4, ¶ 5). Plaintiff argues, however, that the terms of the 2006 License Agreement, including the provisions regarding choice of law, do not apply to it because plaintiff is not a party to the 2013 Addendum. (Pl.'s Resp. in Opp'n to Defs.' Mot., DE 21 at 3).

7

Plaintiff's argument is unavailing where, as set forth below, the 2013 Addendum supplemented the 2006 License Agreement's terms and incorporated the Guaranty's terms. Accordingly Georgia law governs the interpretation of the forum-selection clauses contained in the 2006 License Agreement (DE 8-3, ¶ 14.B) and the Guaranty (DE 8-4, ¶ 6).

If a litigant is party to a contract in which there is a valid choice-of-law provision then that provision generally is binding, even if the contract was executed in a different state. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 601 (4th Cir. 2004). As a matter of contract interpretation, choice-of-law provisions "must be determined by the law of the state chosen by the parties in the contract." Bunker Holdings, Ltd. v. Green Pac. A/S, 346 Fed. App'x 969, 973–74 (4th Cir. 2009). "Absent a contrary public policy, . . . court[s] will normally enforce a contractual choice of law clause." Carr v. Kupfer, 250 Ga. 106, 107 (1982).

Contract provisions, such as choice-of-law clauses and forum-selection clauses, may be incorporated into an agreement by specific reference to other documents "so that such documents are treated as if a part of the document making the reference. As a matter of contract law, incorporation by reference is generally effective . . . where the provision[s] to which reference is made [have] a reasonably clear and ascertainable meaning." Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc., 251 Ga. App. 91, 95 (2001); see JTL Consulting, LLC v. Mendenhall, No. 1:04-CV-3459-JOF, 2007 WL 902374, at *6 (N.D. Ga. Mar. 21, 2007). Clauses may be incorporated even if the relevant incorporation language does not specifically refer to them. World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc., 517 F.3d 1240, 1245 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals approvingly cited J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973), as one such example of broad

8

incorporation by reference. See World Rentals & Sales, LLC, 517 F.3d at 1245. J.S. & H. Construction involved two contracts: a primary contract between the contractor and the owner, and a subcontract between the contractor and a subcontractor. 473 F.2d at 214 n.3. The subcontract broadly incorporated by reference provisions within the primary contract, stating that the subcontractor "agrees to be bound to the Contractor by all of the terms of the agreement between the Contractor and the Owner and by the Contract Documents and to assume . . . all of the obligations and the responsibilities that the Contractor by those instruments assumes toward the Owner." Id. The Eleventh Circuit pointed to that language as sufficient to bind the subcontractor to multiple terms incorporated by reference, such as an arbitration clause, "because arbitration is surely one of the 'obligations' that the contractor assumed toward the owner in the prim[ary] contract." World Rentals & Sales, LLC, 517 F.3d at 1249 n.6.

Georgia courts have applied the same rule of broad incorporation by reference to guaranties. See, e.g., JTL Consulting, LLC, 2007 WL 902374, at * 6–7. Where "[t]he addendum signed by [the guarantor] plainly incorporated by reference the personal guaranty, which has a clear and ascertainable meaning. . . . [the guarantor] is bound by his signature." Charles S. Martin Distributing Company v. Bernhardt Furniture Company, 213 Ga. App. 481, 482–83 (1994). In Charles S. Martin Distributing Company, the court relied on the facts that "[t]he papers . . . make reference to each other; the addendum signed by [the guarantor] refers to the personal guarantee . . . and the guarantee cites the attached addendum." Id. at 482.

Here, both plaintiff and defendant HHF were signatories to the 2006 License Agreement and the Guaranty. (DE 8-3 at 32, 34; DE 8-4 at 3). Plaintiff also bound itself to the terms of the 2006 License Agreement through its execution of the Guaranty, which stated: "As an inducement to

9

[defendant HHF] ('Licensor') to execute the License Agreement . . . [plaintiff and its successors] . . . guarantee that all of Licensee's obligations under the License, including any amendments thereto whenever made . . . will be punctually paid and performed." (Id., ¶ 1). The 2006 License Agreement correspondingly incorporated the Guaranty in its table of contents and included it within the body of the agreement. (DE 8-3 at 4, 33–34). Some years later, the 2013 Addendum supplemented the 2006 License Agreement, without otherwise modifying its terms, and similarly incorporated the Guaranty. (DE 8-7, ¶ 4) ("All other terms and conditions of the License remain in full force and effect, including the Guaranty."). This chain of mutual incorporation linking the 2006 License Agreement, the Guaranty, and the 2013 Addendum, operate to bind plaintiff to the terms of the 2006 License Agreement.

Furthermore, plaintiff's Guaranty resembles the guaranty found binding in J.S. & H. Construction, where the guarantor executed an agreement to assume "all of the obligations and the responsibilities that the Contractor . . . assumes toward the Owner." 473 F.2d at 214 n.3. In its own Guaranty, plaintiff pledged to "guarantee that all of Licensee's obligations under the License . . . will be punctually paid and performed." (DE 8-4, ¶ 1). Just as the decision to arbitrate was "one of the 'obligations' that the contractor assumed toward the owner" in J.S. & H Construction, so too is submission to Georgia law plaintiff's "obligation" as guarantor of the 2006 License Agreement. See 473 F.2d at 214 n.3. Therefore, the mutual incorporation of obligations among the Guaranty, the 2006 License Agreement, and the 2013 Addendum, bind plaintiff to the Georgia choice-of-law provision contained in the 2006 License Agreement and the Guaranty.

10

2. Scope

Next, the court must evaluate whether the forum-selection clause in the 2006 License Agreement and incorporated by the Guaranty encompasses plaintiff's claims for tortious interference with contract, slander per se, and unfair and deceptive trade practices. Plaintiff argues that, even if it is bound by the 2006 License Agreement, that agreement's forum-selection clause does not encompass plaintiff's non-contract claims. For the following reasons, the court finds that the clause does encompass these claims.

Courts interpret the scope of contract provisions according to the relevant state law, and the starting point for analyzing the scope of a forum-selection clause is the language of the clause itself. For example, in Slater v. Energy Services Group Intern., Inc., the Eleventh Circuit Court of Appeals found the following forum-selection clause encompassed a plaintiff's non-contract claims: "The parties agree that all claims or causes of action relating to or arising from this Agreement shall be brought in a court in the City of Richmond, Virginia." 634 F.3d at 1328–29. The agreement also "included a choice of law provision designating Virginia law as controlling." Id. at 1239. The plaintiff, Slater, alleged unlawful termination of her employment and argued that the forum-selection clause in her employment agreement should be read "to encompass only breach-of-contract claims relating to the employment agreement." Id. at 1330. The court disagreed; its analysis began with "the plain meaning of the contract's language," and it "look[ed] at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement." Id. Following its de novo review, the court concluded that Slater's non-contract claims fell within the scope of the forum-selection clause. Id. at 1331. As a result, the court

11

affirmed dismissal of Slater's claims due to improper venue in violation of the applicable forum-selection clause. Id. at 1333.

A number of other cases within the Eleventh Circuit support the same proposition that a forum-selection clause's scope may encompass tort claims related to a breach of contract. In Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109 (11th Cir. 2001), the court found that a forum-selection clause applied to claims "where the tort could not have occurred but for a breach of contract." Id. at 1114. Similarly, in Cooper v. Meridian Yachts, 575 F.3d 1151 (11th Cir. 2009), the court analyzed a forum-selection clause that stated "all disputes arising out of or in connection with the agreement shall be construed in accordance with and shall be governed by the Dutch law." Id. at 1162. The court held that "[s]uch a provision purports to govern 'all disputes' having a connection to the agreement and not just the agreement itself." Id. In Int'l Underwriters AG v. Triple I: Int'l Investments, Inc., 533 F.3d 1342 (11th Cir. 2008), the Eleventh Circuit Court of Appeals explained that forum-selection clauses include claims related to "dispute[s] [which] occur[] as a fairly direct result of the performance of contractual duties." Id. at 1348–49.

Here, the 2006 License Agreement "permits, but does not require, that all suits concerning this License shall be filed in the State of Georgia," (DE 8-3, ¶ 14.B) (emphasis added), and the Guaranty states that "[i]t shall be deemed made and entered into in the State of Georgia," and that defendant HHF may elect to litigate "all matters of construction, validity, enforceability and performance . . . [in the] venue of any courts (federal, superior or state) situated in the County of DeKalb, State of Georgia." (DE 8-4, ¶¶ 5–6) (emphasis added). Although plaintiff accurately labels its allegations as stating claims in tort, this characterization does not remove those claims from the scope of these forum-selection clauses.

12

Plaintiff's first claim, tortious interference with contract, falls within the scope of the forum-selection clause because it "concern[s]" the 2006 License Agreement, (DE 8-3, ¶ 5), and requires "construction" of the Guaranty. (DE 8-4, ¶ 6). Under both Georgia and North Carolina law, to state a claim for tortious interference with contract, a plaintiff must satisfy several elements, including that the defendant acted without justification or privilege. Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc., 222 Ga. App. 185, 188 (1996); United Labs, Inc. v. Kuykendall, 322 N.C. 643, 661 (1988). In evaluating plaintiff's claim, a court must determine whether defendant HHF's statements to Hilton regarding the 2006 License Agreement were justified or privileged within the context of defendant HHF's contractual relationship with plaintiff. See Choice Hotels Int'l, Inc., 222 Ga. App at 188; United Labs, Inc., 322 N.C. at 661. The justification or privilege of defendant HHF's statements necessarily depends upon construal of the 2006 License Agreement and its effect upon their contractual relationship; therefore, it is a "suit[] concerning th[e] License." (See DE 8-3, ¶ 14.B). Accordingly, plaintiff's claim for tortious interference with contract falls within the scope of the forum-selection clause. (See Compl., DE 1-3, ¶ 21) ("The Defendants intentionally induced Hilton not to perform its contract with [plaintiff], and did so without justification . . . [including] falsely informing Hilton that [plaintiff] had a license agreement with [defendant] HHF[.]").

Plaintiff's second claim, slander per se, also is one "concerning" the 2006 License Agreement. (See DE 8-3, ¶ 14.B). Under Georgia and North Carolina law, a plaintiff may show slander per se where the defendant wrongfully impeached the plaintiff in his trade or profession. See Ga. Code Ann. § 51-5-4(a)(3); Raymond U v. Duke Univ., 91 N.C. App. 171, 182 (1988). In support of its claim here, plaintiff alleges that defendants impeached plaintiff by communicating to Hilton that plaintiff was acting without authority under the 2006 License Agreement. (Compl., DE

13

1-3, ¶ 21, 27–28) ("[Defendants'] statements outlined above[, in paragraph twenty-one of the preceding claim for tortious interference with contract,] . . . are false and impeach and reflect unfavorably on Plaintiff in its trade. . . . [And defendants] knowingly published the false statements to Hilton."). Defendants respond that defendant HHF's communications were true descriptions of the contractual relationship according to the 2006 License Agreement, the Guaranty, and the 2013 Addendum. Plaintiff's claim and defendants' defense necessarily implicate the 2006 License Agreement and require construal of its terms. Therefore, plaintiff's claim of slander per se "concern[s] th[e] License," and accordingly is governed by that agreement's forum-selection clause. (See DE 8-3, ¶ 14.B).

Plaintiff's third claim, unfair and deceptive trade practices, relies upon plaintiff's slander claim. (Pl.'s Resp. in Opp'n to Defs.' Mot., DE 21 at 13–14) ("As fraud and false advertising can constitute unfair and deceptive trade practices, so too can libelous or slanderous statements. . . . [Defendants'] statement was unfair or deceptive because it conveyed an untrue message that Plaintiff was taking unauthorized action."). Thus, because the slander per se claim concerns the 2006 License Agreement and Guaranty, plaintiff's claim of unfair and deceptive trade practices also falls within the scope of the parties' forum-selection clauses in the 2006 License Agreement and the Guaranty.

In summary, plaintiff's Guaranty of the 2006 License Agreement, as amended by the 2013 Addendum, binds plaintiff to those documents' terms. Both the 2006 License Agreement and the Guaranty include binding choice-of-law provisions and forum-selection clauses. Plaintiff's claims for tortious interference with contract, slander per se, and unfair and deceptive trade practices, all

14

fall within the scope of the parties' contract provisions. Therefore, the court holds that plaintiff's claims fall within the scope of the forum-selection clauses.

3. Character

Forum-selection clauses frequently are characterized as mandatory or permissive. "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" Global Satellite Communication Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting Snapper, 171 F.3d at 1262 n.24). However, some contracts contain an intermediate category of forum-selection clause that empowers one party to select a forum that then becomes binding upon the other party. Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC, 526 F.3d 1379, 1381 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals construed one such clause in Ocwen Orlando Holdings Corp.: "The first portion . . . is permissive. A party need not sue in Orange County, Florida, but if a suit is initiated there, the defendant's consent to sue in Orange County is contractually provided. The second portion, however, waives the parties' rights to 'transfer' the suit, when filed, to 'any other court.'" 526 F.3d at 1381. In Eisaman v. Cinema Grill Sys., Inc., 87 F. Supp. 2d 446 (D. Md. 1999), a federal district court applying Georgia law found that "discretion under the contract to decide whether it will require litigation in the Georgia courts does not alter the mandatory nature of the clause. Accordingly, the court holds that the forum-selection clause . . . is mandatory." Id. at 449–50.

The forum-selection clauses in the parties' 2006 License Agreement and Guaranty fall within the intermediate category. The Guaranty's forum-selection clause requires that plaintiff "consent

15

and submit, at Licensor's election" to venue in Georgia. (DE 8-4, ¶ 6). The clause is analogous to those clauses construed in Snapper and Ocwen Orlando. See Snapper, 171 F.3d at 1260; Ocwen Orlando, 526 F.3d at 1381. The first part of the clause permits defendants to "elect[]" venue in Georgia, and the second part of the clause mandates that plaintiff "consent and submit" to defendant's choice of forum. (DE 8-4, ¶ 6). Therefore, the forum-selection clause is "permissive" in that it allows defendants to select federal venue in the Northern District of Georgia, and mandatory as to plaintiff "because it requires an absolute submission by them to the jurisdiction of whichever of these fora that [the electing party] chooses." Snapper, 171 F.3d at 1262 n.24.

4.  Federal Jurisdiction in De Kalb County, Georgia

The court must next determine whether venue is proper in a federal district court where the forum-selection clause points to a particular county, but where no federal district court physically is located in that county. In Slater, for example, the court found that a clause providing that "'[a]ll claims or causes of action relating to or arising from this Agreement shall be brought in a court in the City of Richmond, Virginia' allowed suit to be brought in [either] a federal or state court within the City of Richmond." 2009 WL 1010951, at *2. In Ferri Contracting Co. v. Town of Masontown, No. 3-1303, 2003 WL 22244905 (4th Cir. 2003), the court held that a forum-selection clause mandating litigation "in a court [ ] within the state [of West Virginia]" did not preclude venue in federal district court. Id. at *2; see Match Factors, Inc., 2011 WL 1101363, at *9. The court found that the clause permitted federal venue, in part because the clause read "in West Virginia," not "of West Virginia." Ferri Contracting Co., 2003 WL 22244905, at *1.[2]

---

[2] In evaluating the same issue, this court also gave some weight to the intent of the parties as demonstrated through other terms in their contract. Match Factors, Inc., 2011 WL 1101363, at *10 (construing "another provision in the Subcontract which provides that disputes about payment for labor, supplies, and material may be resolved through an 'action for damages . . . in any Court *of* Jackson County, North Carolina.'"). Forum-selection clauses containing

16

Defendants elected venue in the Northern District of Georgia pursuant to the parties' forum-selection clause, which specified that venue lay in "any courts (federal, superior or state) situated in the County of DeKalb, State of Georgia." (DE 8-4, ¶ 6). Although no federal district court physically sits in De Kalb County, De Kalb lies within the federal district court jurisdiction of the Northern District of Georgia, Atlanta Division. See 28 U.S.C. § 90(a)(2). The clause at issue specifically articulated venue in federal court, and plaintiff does not contest defendants' argument on this point.

The forum-selection clause in this instance permits defendants to elect federal district court venue in the Northern District of Georgia, Atlanta Division. The language of the clause, and other provisions of the agreements, indicate that the parties contemplated federal jurisdiction. Most importantly, the clause specifically refers to venue in federal courts. In addition, the clause refers to courts "in" De Kalb County, not state courts "of" De Kalb County. (DE 8-4, ¶ 6). De Kalb County is in the Atlanta Division, and the Atlanta Division federal district court's jurisdiction extends into De Kalb. 28 U.S.C. § 90(a)(2). Furthermore, the 2006 License Agreement, which incorporated by reference plaintiff's Guaranty, "permits, but does not require, that all suits concerning this License shall be filed in the State of Georgia." (DE 8-3, ¶ 14.B). This language mirrors the clause in Ferri Contracting Co., which the court construed to allow federal jurisdiction where it was clear that a district court's jurisdiction encompassed the specified geographic unit. Id.

---

geographic restrictions may permit venue in "'all courts having jurisdiction over that area,' not only courts physically located within the specified boundary." Id. at *9 (quoting Nahigan v. Juno-Loudoun, LLC, 661 F. Supp. 2d 563, 568 (E.D. Va. 2009)); see, e.g., Seventeen S., LLC v. D.R. Horton, Inc., No. 4:13-CV-03119-BHH, 2015 WL 337639, at *6 (D.S.C. Jan. 26, 2015) ("[V]enue in Horry County fairly includes venue in the federal division encompassing Horry County.").

17

at *2. Therefore, the forum-selection clause in the Guaranty permits defendants to elect federal district court venue.[3]

5.  Public Interest

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Atl. Marine, 134 S. Ct. at 581. First, "the plaintiff's choice of forum merits no weight." Id. Second, "private-interest factors [ ] weigh entirely in favor of the preselected forum. . . . [A] district court may consider arguments about public-interest factors only," which include "the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 582, 583 n.6. Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." Id. at 582. "Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,' such cases will not be common." Id. (quoting Stewart, 487 U.S. at 30–31). Ultimately, "[t]he question of transfer [is] a matter resting in the sound discretion of the District Judge." S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956); see In re Ralston Purina Co., 726 F.2d at 1005.

---

[3] Neither party disputes the forum-selection clause's enforceability. "[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the . . . decision whether to give effect to the parties' forum-selection clause and transfer this case." Stewart Organization, Inc., 487 U.S. at 32. The Fourth and Eleventh Circuit Courts of Appeal employ this approach to evaluating forum-selection clauses. Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010) ("Following the majority rule, we thus conclude that a federal court interpreting a forum selection clause must apply federal law in doing so."); P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) ("Consideration of whether to enforce a forum selection clause in diversity suits is governed by federal law.").

Under federal law, "the common understanding is that these [forum-selection] provisions are prima facie valid and should be enforced unless unreasonable under the circumstances." Wright et al., supra. The Fourth and Eleventh Circuit Courts of Appeal share this understanding. Pee Dee Health Care, P.A. v. Sanford, 509 F.3d 204, 213–14 (4th Cir. 2007) ("A forum-selection clause is prima facie valid.") (citations omitted); Slater v. Energy Services Group Intern., Inc., 634 F.3d 1326, 1331 (11th Cir. 2011) ("Mandatory forum-selection clauses are presumptively valid and enforceable.") (citations omitted). Federal district courts in both circuits apply the same rule. See, e.g., Queen City Pastry , LLC, 2015 WL 3932722, at *5; Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004).

18

In this case, plaintiff fails to carry its "burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Atl. Marine, 134 S. Ct. at 581. Plaintiff's choice of forum in the Eastern District of North Carolina is accorded no weight, and the court may not consider the parties' private interests where, as here, the parties already have bargained for them in a forum-selection clause. See id. at 581–82. Therefore, the court considers only the public interest in determining whether transfer pursuant to § 1404(a) is proper.

Here, "the interest in having the trial of a diversity case in a forum that is at home with the law," favors transfer to the Northern District of Georgia. See id. at 583 n.6. For the reasons stated previously, the 2006 License Agreement, the Guaranty, and the 2013 Addendum, all are to be interpreted according to Georgia contract law; therefore, it is appropriate for this diversity case to be tried in the state that is most familiar with that body of law. In addition, the rule that "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules" also supports transfer because Georgia's choice-of-law rules will apply, making it more appropriate for the case to be sited in the Northern District of Georgia. Id. at 582.

In sum, the public interest favors transfer of this case to federal district court in the Northern District of Georgia. While this court recognizes the practical consequences of requiring plaintiff to litigate this matter in the Northern District of Georgia, in light of all the above circumstances, transfer of venue is "in the interest of justice," and proceeds according to the parties' mandatory forum-selection clause, "to which all parties [ ] consented." 28 U.S.C. § 1404(a). Therefore, the court grants defendants' motion to transfer pursuant to § 1404(a).

19

C.	Remaining Motion to Dismiss

Where the court has allowed the transfer of venue to the Northern District of Georgia, the court leaves to that court resolution of defendants' motion to dismiss under Rule 12(b)(6), provided it remains applicable upon transfer. See Atl. Marine, 134 S. Ct. at 575 (deferring challenges pursuant to § 1406(a) and Rule 12(b)(3) in favor of transfer under § 1404(a)); Pawlik, 2014 WL 793080, at *10 ("In light of the Court's recommendation regarding transferring venue, there is no need to address those portions of Defendant's Motion that seek dismissal for failure to state a claim."). Accordingly, the court denies without prejudice defendants' motion to dismiss.

## CONCLUSION

Based on the foregoing, defendants' motion to transfer (DE 7) is GRANTED, and defendants' motion to dismiss for failure to state a claim (DE 7) is DENIED WITHOUT PREJUDICE. It is therefore ORDERED that this action is hereby TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Division. The clerk is DIRECTED to send a certified copy of this order together with the case file to the Clerk of Court for the Northern District of Georgia, Atlanta Division.

SO ORDERED, this the 19th day of November, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge